

March 17, 2023

U.S. Court of Appeals, Fifth Circuit
600 S. Maestri Place, Suite 115
New Orleans, LA 70130

    Re:    Cause No. 22-20279 (Consolidated with No. 23-20013); *Clifford F. Tuttle, et al. v. Eric Sepolio, et al.*; In the United States Court of Appeals, Fifth Circuit

I write on behalf of the Appellees, responding to this Court's March 1, 2023 notice that Nos. 22-20279 and 23-20013 had been consolidated, briefing in No. 23-0013 was canceled, and the parties may file letter briefs addressing any subject that was not otherwise covered by the supplemental letter briefs filed on January 20, 2023 in No. 22-20279.

## I.    Introduction

As the Court will recall, after the district court issued Order 229 but before the appeals of Orders 190 and 229 were consolidated, the Court requested supplemental letter briefs addressing the impact of Order 229. Appellants and Appellees filed their letter briefs on January 20, 2023.

In this letter, Appellees respond to arguments made in Appellants' January letter brief (Doc. 110) (Letter Brief) in the order they were raised.

A Limited Liability Partnership

America Tower, 39th Floor | 2929 Allen Parkway | Houston, Texas 77019 | Tel 713-659-6400 | Fax 713-659-6262 | www.warejackson.com

**II.    The dismissal of the wrongful search and seizure claims should not be changed to a dismissal with prejudice.**

The unlawful search and seizure claims are not before this Court, which Appellants appear to concede, admitting those claims "are not an active part of this case." Letter Brief, p. 5. Nonetheless, Appellants ask the Court to reform the Order to specify that the wrongful search and seizure claims against them are dismissed with prejudice. Appellants argue, as they did during oral argument, that the Court must intervene because Appellees could subject the officers to discovery and then re-assert the claim against them.

That argument was incorrect then and is incorrect now. Barring an appeal, the dismissal without prejudice would be a final disposition of the claims because the statute of limitations has run on the Section 1983 claims. *See Khoury v. Thota*, No. 20-20578, 2021 WL 3919248, at *3 (5th Cir. Sept. 1, 2021); *see also* Appellees' October 10, 2022 Letter (Doc. 00516502723).

**III.   The supervisor liability claim against Gonzales based on the illegal warrant is not conclusory.**

Appellants argue that the supervisor liability claim against Gonzales, which is based on Goines' procuring an illegal warrant, should be dismissed because the allegations relating to Gonzales's knowledge are speculative and conclusory. Letter

Brief at 8-9. However, the cases cited by Appellants do not support their argument.

*Al-Saraji v. City of Dallas*, No. 3:10-CV-1918-O, 2011 WL 13232608, at *3 (N.D. Tex. Mar. 21, 2011), involved a *Monell* claim, and the district court pointed out that an allegation of "'[p]ersistent and repeated abuse' may be enough to find a custom sufficiently widespread and well-settled to constitute municipal policy, but Plaintiffs allege no facts as a basis for their allegations." Similarly, this Court in *Floyd v. City of Kenner*, 351 Fed. Appx. 890 (5th Cir. 2009), found the allegations that a defendant "participated in, approved, and directed" the filing of a false affidavit for a warrant were conclusory because there were no factual allegations supporting the assertion. *Id.* at 898. But the Court accepted as true assertions about other defendants' knowledge and animus because they were supported by factual allegations. *See id.* at 895, 896.

When construed in a light favorable to Appellees, their Complaints include ample factual allegations to support an inference that Gonzales was aware of the risk of Goines obtaining an illegal no-knock warrant. In particular, Appellees pled two facts that would have led anyone familiar with Goines's work to realize that he chronically violated the Fourth Amendment. First, Goines almost exclusively obtained no-knock warrants, a practice that had been illegal for decades. ROA.753,

795. *Bishop v. Arcuri*, 674 F.3d 456, 467 (5th Cir. 2012) (a default practice of engaging in no-knock warrants for narcotics searches has been illegal since 1997). Second, Goines obtained a no-knock warrant 99% of the time by claiming a gun was present at the premises, but no guns were identified in any of the post-warrant inventories for those warrants. ROA.753, 795.

Appellants ignore these allegations as well as the factual allegations the district court referenced in its Order, including the portions of the Order cited in Appellants' letter brief that are not in bold. Letter Brief at 8-9. Thus, Appellees' allegations are not conclusory, and the district court correctly held that Gonzales's failure to supervise contributed to the unlawful search and seizure.

**IV.     Appellants misapply the legal standards to the excessive force claims.**

Appellants contend that the excessive force allegations should be dismissed because they are conclusory and speculative. But the basis for their conclusion is that the Court should make factual inferences in their favor. Specifically, Appellants suggest that the Squad 15 officers were justified in shooting Nicholas and Tuttle because no-knock warrants are dangerous, and officers expect gunfire. They also argue that this Court should not accept Appellees' allegations that Nicholas and Tuttle were unarmed because several officers were shot during the raid. Letter Brief

at 12.

But "[w]hen considering a motion to dismiss, the court accepts as true the well-pled factual allegations in the complaint and construes them in a light most favorable to the plaintiff." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir 2002). That standard of review applies to both prongs of the qualified immunity analysis. *Tolan v. Cotton,* 572 U.S. 650, 656 (2014) ("under either prong [of the qualified immunity analysis], courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment").

Deadly force violates the Fourth Amendment unless "the officer has probable cause to believe that the *suspect* poses a threat of serious physical harm, either to the officer or to others[.]" *Tennessee v. Garner*, 471 U.S. 1, 11 (1985) (emphasis added). In the cases cited by Appellants, the officers were entitled to qualified immunity because undisputed evidence supported the conclusion that the officers reasonably determined that the suspect posed a serious, imminent threat. *Manis v. Lawson*, 585 F.3d 839, 844 (5th Cir. 2009) ("The Appellees do not dispute the *only* fact material to whether Zemlik was justified in using deadly force: that Manis reached under the seat of his vehicle and then moved as if he had obtained the object he sought.") (emphasis in original)); *Salazar-Limon v. City of Houston*, 826 F.3d 272, 278 (5th

Cir. 2016) ("Salazar did not deny reaching for his waistband"); *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (suspect had a large knife and was in striking distance of her roommate).[1]

The decisions cited by Appellants do not support granting qualified immunity on the officers' motions to dismiss because Appellees have sufficiently alleged that Nicholas and Tuttle were shot without provocation. *See Cole v. Carson*, 935 F.3d 444, 457 (5th Cir. 2019) (en banc) (no qualified immunity for use of deadly force because circumstances surrounding shooting were "all disputed"); *Baker v. Putnal*, 75 F.3d 190, 198 (5th Cir. 1996) (chaos and suspect turning toward officer do not justify excessive force).

The potential threat of gunfire during the execution of a no-knock warrant does not make deadly force reasonable. The Court must assess whether the allegations show that Nicholas and Tuttle posed an actual threat to the officers. *See Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 412 (5th Cir. 2009) (a potential threat is irrelevant; the Court must assess the actual threat).

Additionally, while the Court may consider what the officers knew at time of

---

[1] *White v. Pauly*, 580 U.S. 73 (2017), also cited by Appellants, concerned whether an officer violated clearly established law by not warning before engaging in deadly force. *White* tells the Court nothing about adequacy of the plaintiff's allegations.

the raid, it should not infer that they anticipated gunfire during the raid. *Cole*, 935 F.3d at 456. Appellees allege that the officers knew the initial investigation of Nicholas and Tuttle found no criminal activity. ROA.737, 806. They knew the warrant was illegally obtained. ROA.737-38, 805-06, 814. The officers would have been confident that Goines lied about Nicholas and Tuttle having a gun in order to obtain a no-knock warrant because 99% of the time after executing a no-knock warrant obtained by Goines based on a gun being present, no gun was found. ROA.753, 795.

To hold that Nicholas and Tuttle posed a threat to the officers because several officers were shot in the raid, as Appellants suggest, the Court would have to disregard Appellees' allegations that Nicholas and Tuttle were unarmed and did nothing to provoke the use of deadly force. *See Pena v. City of Rio Grande City*, Tex., 816 Fed. Appx. 966, 973 (5th Cir. 2020) (accepting as true plaintiff's allegations that "the incident involved an unarmed, teenage girl who neither threatened the officers, herself, nor anyone else, nor was a suspect in a crime or had any criminal record").

Appellees allege that after an officer shot Nicholas and Tuttle's dog, the Squad 15 officers started blindly shooting through the walls and windows of the house.

ROA.727-28, 814-15. Nicholas was killed by an officer outside the house who could not see her. ROA.822. At least nine bullets struck Tuttle. ROA.728. He was first hit entering the living room but most of the shots struck him in the back, probably while he was lying on the floor. ROA.727-28, 822. According to the Complaints, what made the officers fire their weapons was *hearing* an officer shoot the dog. *See Keeton Geiger v. Sloan*, 780 Fed. Appx. 150, 154 (5th Cir. 2019) (if officers started shooting without seeing a gun, the officer "could not have reasonably perceived a threat of imminent harm and should not have used deadly force").

A reasonable inference based on plaintiff's allegations is that that the officers shot one another because they blindly fired their weapons, not because they considered Nicholas or Tuttle an imminent threat. It is also reasonable to infer that the officers were shot *after* Nicholas and Tuttle were killed because the officers were firing their weapons in response to their own gun shots.

To determine that friendly fire rendered the officers' use of deadly force against Nicholas and Tuttle reasonable, the Court must assume that the officers reasonably perceived that Nicholas and Tuttle were shooting at them. But that is an impermissible inference in favor of the officers and contrary to the allegations. Appellees have properly pled that the officers' use of deadly force was unreasonable

and a Fourth Amendment violation. *See Cole*, 935 F.3d at 453 (use of deadly force when suspect poses no threat is obvious Fourth Amendment violation); *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 279 (5th Cir. 2015) (same).

Finally, Appellants claim that discovery shows that Tuttle was armed and fired at the Squad 15 officers. This, like Appellants' other factual contentions, must be ignored. *See* Fed. R. Civ. P. 12(d).

## V. There is no basis for dismissing the supervisor liability claim against Gonzales based on excessive force.

Appellants contend that Gonzales cannot be liable for supervisor liability based on excessive force because he had no personal involvement in the raid. But a supervisor liability claim is not based on the supervisor personally committing the constitutional violation. *See, e.g., Parker v. Blackwell*, 23 F.4th 517, 523-24 (5th Cir. 2022) (plaintiff sufficiently pled that his rights were infringed by an official who was deliberately indifferent to a specific risk of harm posed by a hiring decision); *Pena*, 879 F.3d at 620-21 (supervisor overseeing the act resulting in a constitutional violation).

A reasonable conclusion from Gonzales's role as Squad 15's direct supervisor and Squad 15's history of excessive force is that Gonzales had the authority to prevent the constitutional violations but failed to do. *See Hinshaw v. Doffer*, 785

F.2d 1260, 1263 (5th Cir. 1986) (liability exists where the superior officer fails to control the subordinate officer's known propensity for improper use of force). Additionally, Appellees allege that an HPD audit conducted after the raid found "that at least six standard operating procedures promulgated by HPD which governed the conduct of Squad 15 'lacked sufficient supervisory oversight.'" ROA.756, 852. The audit described an "overwhelming need" to improve supervision. ROA.756, 852-53.

Appellees sufficiently pled facts from which one could reasonably infer that Gonzales's failure to control the officers' known propensity for constitutional violations caused Nicholas's and Tuttle's injuries.

Sincerely,

*(s) Margaret Bryant*
Margaret Bryant
margaretbryant@warejackson.com

## Certificate of Service

I certify that on March 17, 2023, the foregoing document was electronically filed via the Court's CM/ECF system and served upon counsel of record.

*(s) Margaret Bryant*
Margaret Bryant

U.S. Court of Appeals for the Fifth Circuit
March 17, 2023
Page 11

## Certificate of Compliance

I certify that the foregoing was prepared in Microsoft Word in Times New Roman 14 point font; the word count function shows that the body of this letter contains 1959 words.

*(s) Margaret Bryant*
Margaret Bryant
